JENS A. PETERSON v. EDWARD MAUER AND OTHERS.[1]

February 20, 1925.

Nos. 24,362, 24,363.

**Verdicts sustained by evidence.**

1. Evidence considered and *held* sufficient to justify the finding of the jury as to the defendant's negligence and the boy's contributory negligence.

**Verdict reduced to $4,000 not excessive.**

2. Verdict, as reduced by the trial court, *held* not excessive. We see no abuse of discretion by the trial court in denying appellant's

[1] Reported in 202 N. W. 344.

motion for a new trial on the ground of alleged newly discovered evidence.

*Headnote 1.   See Motor Vehicles, 28 Cyc. p. 47.
Headnote 2.   See Damages, 17 C. J. p. 1095, § 409.

Two actions in the district court for Ramsey county to recover $25,000 and $5,500, respectively.   The cases were tried together before Michael, J., and a jury which returned verdicts for $7,500 and $100.   From orders denying their motions for judgment notwithstanding the verdicts and from an order granting a new trial of the minor's action unless plaintiff consented to a reduction of the verdict to $4,000, defendants appealed.   Affirmed.

*Cobb, Wheelwright, Hoke & Benson* and *Tracy J. Peycke,* for appellants.

*Barton & Kamuchey,* for respondent.

QUINN, J.

Two actions, tried together, one by the father, for the benefit of his minor son, to recover for personal injuries to the son; the other by the father to recover special damages in caring for the son in consequence of such personal injuries.   There were verdicts in favor of the plaintiff in each case.   From an order denying their motion for a new trial, defendants appealed.

The main cause of action grows out of an automobile accident which occurred on Dearborn street, in the city of St. Paul, on October 24, 1923, between Gorman street on the east and Humboldt avenue on the west.   The Garfield school grounds abut Dearborn street on the north and Gorman street on the west, and extend west to the center of the block between Humboldt avenue and Gorman street.   The schoolhouse sits back from both streets and faces to the east on Gorman street.   Dearborn street is not paved at this point, has a dirt surface, and was a little rough at the time in question.

Six schoolboys, each of about the age of 12 years, were playing at football in Dearborn street, three of them being stationed near Gorman street, facing west.   The other three, including the one injured, were in the same street, to the south of the west line of

the school grounds, facing to the east. Two other boys were standing nearby, watching the play.

While the boys were in the street playing as above indicated, a Ford laundry truck, belonging to the defendants Mauer, and operated by their employe Hoyle in the course of their laundry business, came from the west on Dearborn street, crossed Humboldt avenue, and continued east toward the boys. The driver testified that, when within about 30 feet of the boys, he sounded the horn on his car; that the boys were kicking the ball; that he slowed down; that he thought they were getting out of the way; that, when about 6 feet in front and to his left, the Peterson boy ran in front of his car; that he applied the brakes and turned his car to the right, but it struck the boy; that the car went some 4 or 5 feet, after it hit the boy, before it stopped; that when it stopped the right front wheel was in the gutter on the south side of the street; that he was driving about 7 or 8 miles per hour as he approached the boys.

Edward Peterson, the injured boy, Walter Kestner and Harry Meyer composed the group of boys farthest west. They will be referred to by their given names. Edward was farthest south of the three. The car was approaching them from the rear. Walter testified that he discovered the car coming when within about 15 feet of them; that he hollered to the others: "There is a car coming"; that, when he hollered, Edward started south toward the gutter and the car turned and followed him right up and hit him near the gutter; that the car was going about 20 miles per hour; that his hearing was good but he heard no horn or other alarm as the car approached, and that his attention was directed to the car by the noise it made in the street.

Harry testified that he heard the car coming, turned and saw it as it hit the crossing on the east line of Humboldt; that it was about in the center of the street; that Charles, one of the other group, shouted: "Look out, here comes a car;" that Edward did not hear him as Charles' voice was low; then Walter hollered louder, and Edward started to the south and the car trailed him right up and hit him; that they were just about in the middle of the street

playing; that he heard no bell or gong; that the car was coming about 20 miles per hour, and that Edward was to the south of him.

Arthur C. Brown was watching the play. He testified that, when Charles hollered that there was a car coming, Edward started south and the car followed him and he was struck and carried about 2 feet, and then lay under the car, near the rear left wheel, a little distance from the gutter, on the south side of the street; that his hearing was good but he heard no gong or bell. Other boys testified that they saw the accident, as to the speed of the car, and that they heard no gong or other danger signal given.

Under the evidence, the question as to the defendants' negligence, and of the boy's contributory negligence, was for the jury.

The boy was considerably dazed, rendered semi-conscious by the impact. His collar bone was fractured. He was taken to a hospital where he remained until October 27, when he was taken home. He received a bump on the left side of his head, and it is urged that the hearing in his left ear was greatly impaired. There was evidence that blood and pus discharged from the ear. There was a marked decrease in the functioning of the ear at the time of the trial. There was a defect of hearing in the right ear before the accident. There was a verdict of $7,500 in favor of the boy, and one for $100, special damages, in favor of the father. The court reduced the former to $4,000.

Dr. Mortenson had treated the boy before the accident, as well as other members of the family; had removed the boy's tonsils; and took care of him after the accident. He testified that the boy's left ear was normal before the accident and that, after the accident, he found the left ear drum ruptured and a profuse discharge of blood and pus from it; that the boy was dizzy and vomited, indicating brain disturbance, and that the hearing in the left ear was diminished 75 per cent.

Dr. Larson testified that he had examined the boy after the accident and found the left ear drum ruptured, granulation, and a diminished hearing of 85 to 90 per cent; that, in his opinion, the condition was caused by the accident, and that, in his opinion, there would be 75 per cent permanent loss of hearing. The verdict

has the sanction of the trial court, and it was not so excessive before reduction as to indicate passion and prejudice and, as reduced by the trial court, leaves no desire on our part to interfere with it.

We discover no abuse of discretion in the denial of a new trial, on the ground of newly discovered evidence. We are satisfied that the trial court was within its discretion in refusing a new trial.

Affirmed.